May it please the Court, clerks, opposing counsel, Tom Hartzell on behalf of Michael Gonzalez. And I assume the Court received the government's letter of May 9th indicating that it was withdrawing its statement that the correct standard of review for this efficiency of the evidence claims would be for plain error, agreeing that a Rule 29 motion was timely filed, and conceding that the standard of review in those insufficiency claims would be de novo. Correct me if I'm wrong, but I just got it yesterday. The Court did receive that. Does that make any difference? I think it does. I do think it does, because it would be plain error. Just as long as we apply the right standard. That's all that you care about, right? Yes, sir. Okay. Dealing first with the 924C allegation, the gun charge, I think I have to correct a misapprehension in the government's brief where the government was indicating that Mr. Gonzalez, who was a Border Patrol agent in December of 2005 when this occurred, in trial testified that he agreed that no one would ever, no law enforcement agents would ever leave an unarmed person, an unarmed agent, alone with a load of marijuana. In fact, the actual testimony, the question was, and you would certainly understand that a Border Patrol agent would never, ever leave an unarmed agent to guard a load of marijuana alone. The response was, no, sir, I do not. So where the government seems to indicate that he was agreeing with that, I believe that the transcript itself indicates the opposite. There was testimony from, I think it was Agent Rogers, that he wouldn't have left it. Right. Agent Rogers might have made that decision. And it stands basically pretty good common sense that that's true. Mr. Rogers asked for the badges and looked to see that the three ununiformed agents had weapons before he took off with the dog. So, I mean, isn't there enough evidence there for the jury to find that the gun was of some value in pulling this off? Not to mention the fact that he's out in the middle of nowhere. The people whose car, truck, excuse me, it actually was, nobody knew where they were. They could have come running back. And his gun enabled him to get a bailout without worrying about that. Well, that's where I disagree. I know. The first uniformed officer was Officer Duckett. There was a typo at one point in the transcript where the name Duckett was written down Rogers. But there was an Arizona Department of Public Safety officer, Keith Duckett, who was in uniform, who checked the badges, not initially, of the three off-duty Border Patrol agents who arrived, one of whom was Agent Rogers. At this point, when Michael Gonzalez arrives, Agent Rogers has already suggested to DPS officers and Officer Duckett that he go off into the desert and try to track down the driver and the passenger of the truck containing the marijuana. The driver and the passenger were seen sort of rappeting off over the hills in the desert there. And there were then four law enforcement officers and a canine in pursuit of them when Gonzalez was left alone. So I don't think it was, there was much likelihood that the passenger and the driver would double back. Plus, there was an Arizona Department of Public Safety marked vehicle and a United States Border Patrol marked vehicle right there when Gonzalez was there. So I don't think that the gun plays, the facts don't indicate that the gun would play a significant role here. Because there's such a show of authority, such a show of power there by the side of the road, that Gonzalez in uniform, whether or not he had the gun, would be sufficient to deter anyone who intended to perhaps get back and get this truck and take off with the 30 bales of marijuana. All of the cases that deal with this, I think all of them ask for something somewhat more transitive, if you will, somewhat more active, somewhat more involved, and warn courts away from coincidence or inadvertence for possession of the firearm. Several cases refer to a footnote, a footnote from the U.S. Code, Congressional and Administrative News, that the government also cited in its brief. And this footnote was cited in one case and cited by the government to indicate that it was the intent of Congress to hold law enforcement officers liable for illegal use of their guns. But nobody bothered to write out this whole footnote, footnote 10, from 1983, page 3492, talking about the 1984 amendments to 18 U.S.C. section 924C. Prior to the amendment, law enforcement officers and people who were licensed to carry guns, people who legally carried guns, were exempted from the application of 18 U.S.C. 924C. Counsel, this fellow wasn't, when he took that bale of marijuana, he wasn't really acting in his official capacity at all. Maybe I see this case a little bit simplistically, but if there was evidence that, which there was, that this guy would not have been left alone with the marijuana if he hadn't had a gun to protect it. And the jury believed that. That seems to be enough. I don't think that is enough. I don't think the case law supports that being enough. If he had a gun to protect it, it wasn't, it wasn't Officer Duckett that left him there. There was Agent Rogers who was gone just for a few minutes and went off about 100 feet or so from the road. It was, I think, more his status as a Border Patrol agent. He had a gun possibly to use to protect it if necessary, but the gun played no role in the grabbing of the bale. He was alone with the marijuana because he was a law enforcement agent. He had a gun because he was a law enforcement agent. Time and time again, law enforcement agents with their guns are going to find themselves in proximity of drugs. Suddenly, if, taking this in the light most favorable to the government, Gonzales says, huh, I'm by myself. Look at all these bales, I think. I'll take one. But there, it's, there's a detachment there. There's a disconnect from him being left with the car, or the truck, rather, loaded with weed, and him making the decision, oh, I'm going to grab the bale. The gun itself was worn every day, as was his shirt, pants, boots, and badge, and it made no part, there was, there was no intent, which cases also say must be required, for Gonzales to somehow employ this gun in relation to or in furtherance of taking the bale of weed. And when I say intent, I'm referring to U.S. v. Mosley, which is in the briefs at page 415, which is a Ninth Circuit case. I'll read the last, the one sentence. Ultimately, we emphasize that a conviction under the statute requires proof that the defendant possessed a weapon to promote or facilitate the underlying crime, a question that turns on the intent of the defendant's intent to take the bale of weed. And here, based on all the evidence, when the defendant got up that morning and brushed his teeth and combed his hair and put on his uniform, he had no idea, and put on his gun, he had no idea that he was going to be left alone with a pickup truck with 30 bales of weed in it. There was no intent that, when he left the house and he had his gun on his side, there was no intent that he was going to use it to somehow, you know, facilitate or further or promote the underlying crime. He was there, he could have had, you know, a wooden gun dyed with a shoe polish for all the role that this weapon, this Beretta, this real gun, played in the crime. Is the testimony that he would not have been left alone with marijuana if he didn't have a gun? And I counter that, and I don't want to seem redundant, Your Honor, but when he was left alone with the gun, there wasn't, at that point, the intent to take the bale. By the time it was ‑‑ I think there was, because he told the guy that he heard a gunshot, which he probably didn't. He testified he heard a shot or a loud noise, yes, Your Honor. But don't forget, too, that when Agent Roger shows up, he dispatches Officer Duckett off into the desert, too, so he's alone with it. And then Gonzales shows up shortly thereafter, and he's alone. There's no telling what, you know, what Agent Roger's intent was at that time either. But certainly, at all times, there is one armed officer alone at the pot, and Gonzales looks around, doesn't see anybody, and takes the bale. The courts are being cautioned against just making an automatic violation of 924C whenever a police officer commits a drug trafficking crime, especially here when you have a crime of opportunity. I think that's where this footnote to the U.S. Code and Congressional Administrative News needs to be read in its entirety. There's certainly not just that part of a sentence that's been quoted in the case that the government cited. As I was explaining before the amendment, a law enforcement officer couldn't be held liable for a violation of 924C. They were exempted. When they amended it, suddenly a law enforcement officer can. But the committee here is talking about the other protections that are put in there to prevent an inadvertent conviction just because or rather a conviction for an inadvertent possession of a weapon. And I quote from, and I'm not quoting the footnote in length because it's rather long, The unlawfully provision was added originally to Section 924C because of congressional concern that without it, policemen and persons licensed to carry firearms who committed Federal felonies would be subjected to additional penalties even where the weapon played no part in the crime, whereas the section was directed at persons who chose to carry a firearm as an offensive weapon for a specific criminal act. And it goes on to say that the requirements that the firearms used or possession be in relation to the crime would preclude its application to a situation where the presence played no part in the crime, and then has an example. But what the congressional intent here is very clear. It's that if a cop commits a crime that just, you know, at the spur of the moment, as Gonzales did here, then this in relation to requirement will protect him from doing the additional five years plus. And here we have a situation where the in relation to is not being applied because he wouldn't have been in that position if he wasn't a law enforcement agent, and he wouldn't have a gun if he wasn't a law enforcement agent. And it was more the totality, the gestalt, if you will, of the occurrence here that allowed him to be alone, the marked car, the uniform. Sure, the gun's part of the uniform. But there is simply an intransitive possession of it. There wasn't a use, it wasn't employed, and it wasn't carried to further this, because the only way he could avoid, you know, this kind of argument that the Court's making, that the government's making, was to have decided to take the bail, unstrap the gun, thrown it in the car, gone and got the bail, put it in his car, and then put the gun back on, but then would be in the same place where but he was left with the weed because he had the gun. And even if he had gone through that sort of affirmative response to not being in the presence of marijuana while wearing the gun, the government would still be making this argument, and I think it would have no force then as it has no force now. And there's every case that's cited in the briefs, both the government's and the The weight of the marijuana, and I think that how can Mr. Jowles, when he was arguing the case, told the jury, well, sure, give him a half a kilo for the wrapper, but let's work with the average of 20.5 kilos for the weight of the bail, because that would be the average of these 30 bails. So the 670 pounds divide or the 29 bails that were found, the 670 pounds divided by the 29. Now, the jury was given an interrogatory to pick, you know, how much weight, how much weight did the government prove that the government proved the possession. Even though case law says we're dealing with a preponderance here, the jury was only 20 kilos, which is the exact mean of the seized marijuana, and I'm saying there's a logical, mathematical impossibility that a bail could weigh as much as or more than the average by a preponderance of the evidence. It can't be proved by a preponderance that something in a 50 percent category is 50 percent more, 50 percent less, are the probabilities. And so, therefore, the finding of this weight as being 20 kilos, even subtracting the government's generous 0.5 kilos of wrapper, defies both the preponderance of the evidence standard as well as the beyond a reasonable doubt standard, and certainly must be remanded for sentencing on that. As to the argument under 18 U.S.C. 925 that this gun can't be the focus of a prosecution because it was a government gun, just based on the preamendment 924, 18 U.S.C. 924 statute, certainly Congress at one point intended to exempt law enforcement officers from prosecution for carrying, using, possessing a firearm in the furtherance of a drug trafficking crime or a crime of violence. If Congress fixed half of it and didn't fix the other half, I still think the statute is unambiguous on its face, and to the degree that there is any ambiguity, the rule of leniency requires this Court to resolve that ambiguity in favor of Michael Carlos Gonzalez. I've got three minutes left. I'll save it for rebuttal. Certainly. Thank you, Mr. Giles. Mr. Hartzell, Mr. Giles. Giles. May it please the Court. Brad Giles, Assistant U.S. Attorney, appearing on behalf of the government in this case. Based upon the substantial evidence presented in the trial of this case, the district court properly denied the defendant's motions for judgment of acquittal. As a preliminary matter, the government did submit a 29J letter. This Court has never expressly ruled as to whether or not an oral motion for judgment of acquittal is required at the end of trial. Other circuits have, and the plain language of the rule, of course, can be read by the Court. We would just reserve that argument and submit on the basis of the 29J letter. A rational jury could have and indeed properly rejected the defendant's argument that he can't be convicted of the use of this firearm in furtherance of this offense. Although there is no Ninth Circuit case law directly on point, from my review of the findings of the other circuits, there is not a single case yet that finds that a law enforcement officer should have been acquitted for using their service duty issue weapon when they commit either a crime of violence or a narcotics trafficking offense. This Court, in the Rios case and in the Hector case, has established a standard that we can look at to see if this firearm's use was sufficient. In the Rios case, the factors considered were the proximity, accessibility, and the strategic location of the gun, and this Court said mere possession is not enough. There has to be some sort of nexus between the gun and the underlying offense. The Hector case went a little further and said we look at the totality of the circumstances and a healthy dose of common sense. I'd like to look at the factual scene that played out on this day when Michael Carlos Gonzalez took the bail. There are six reasons why we have a nexus in this case. Number one, there's the opportunity to commit the crime, as this Court had noted. This is not simply a crime of opportunity that the defendant walked upon. It's an opportunity that he created. He created it by placing himself in this situation and then creating the ruse of gunfire. The agent who left him on scene was Agent Rogers. He had previously been checked by the stopping officer, Officer Duckett. Duckett testified that he saw the badge in his gun before he left him alone on scene. If we look at what Agent Rogers did when he got on scene, he got out of his car. As the Court sees on the videotape, Officer Duckett immediately went for his weapon. This was an incredibly dangerous scene. Two fugitives have just fled into the brush. There's the potential for chase vehicles that go with the load vehicles. It's in proximity to the international border, and he has no idea who these plainclothes agents are. Agent Rogers identifies himself immediately. The other two agents who were with him go off in the brush to engage in this chase, and he goes back. He's a newer agent. He actually grabs a spare magazine and handcuffs for protection and begins to go out and engage in the chase. Then he realizes Officer Duckett has a canine, so he goes back, and Officer Duckett relieves him. That's the point when he checks the badge and gun. The testimony of Agent Rogers as far as what he did next clearly keyed into the dangerousness. He goes and he takes the keys out of the vehicle so people can't hijack this load vehicle. He checks the vehicle for weapon, and then the person arrives who's supposed to help him out, the defendant. As they're standing there talking is when this ruse of gunfire is created. So certainly the firearm created the opportunity, as Agent Rogers testified. He would never have left the defendant alone were it not for the fact that he had protection from these elements. The second factor that the courts have looked at is the proximity and accessibility of the gun. These were cited in the Hector and Lopez decisions, and this gun could not have been more accessible to the defendant when he committed this crime. Third, the gun was displayed in plain view. As the First Circuit said in the Villafane Jimenez case, when a law enforcement officer displays a gun in plain view during the commission of this type of crime, it has the potential to discourage not only members of the public who were driving by on that road in plain view that day as the officer placed this on top of the car, but also other legitimate law enforcement officers who were responding in backup that day. Fourth, this firearm absolutely emboldened this defendant. When we watch the callousness and just the calm nature about this defendant when he commits this crime, when he walks down a public roadway after having pulled his marked Border Patrol vehicle with the overhead lights on, walks back to the tailgate, takes out a bail, sets it right on top of that tonneau cover in plain sight, rearranges the bails to cover their position, and then he walks right down the roadway, placing it first in the backseat and then in the trunk of the vehicle. It's clear that he was emboldened to commit this crime. It provided him with protection and a sense of security. Fifth, as this Court's noted, the defendant admitted at trial during cross-examination he was not acting as legitimate law enforcement officer when he took this bail. This weapon was a necessary prop for his ruse to general public and responding law enforcement officers who may intervene that he was, in fact, acting as legitimate law enforcement officer. And finally, and perhaps most importantly, is the ruse that he selected to get the other officer, Agent Rogers, off the scene. It was a ruse that drew upon the dangerousness of the situation. It was the ruse of gunfire. Clearly, after creating this opportunity by something that preyed upon the dangerousness of the situation, if all these factors hadn't added up by that time to make the firearm relevant, the ruse that he created certainly made it relevant at that point. So for all these reasons, we would submit that the evidence was more than sufficient to support the jury's finding with regard to that conviction. The next point that I'd like to address would be the weight of the marijuana. The jury in this case, and Mr. Hartzell said 20 kilograms. It was actually 10 kilograms that the jury found beyond a reasonable doubt within the trial of this case. This court reviews the factual findings of the district court for clear error, and the district court only had to make this finding by preponderance of the evidence. What the government submitted at trial was, first of all, the testimony of Officer Duckett, the original stop officer. He individually weighed each one of those bales to determine the weight, and the jury actually received Exhibit 8, which was a tabulation sheet which had listed all of the individual weights of the bale. They received photographs of individual bales that actually had their weights marked on them by narcotics traffickers. These included a bale that had a weight of 10.05 kilograms, or excuse me, 10.08 kilograms, and a bale that had a weight marked on it of 12.3 kilograms. So the jury had those representative sizes as marked by the traffickers themselves. In addition to the tabulation sheet, the government also submitted the videotape. When we watch this videotape or when the court looks in the supplemental excerpts of record, I believe it's page number three submitted by the government, we can see the defendant hefting this bale into the back of the vehicle. He has his legs bent. Clearly, this has a substantial weight to it. It's not one of the smaller bales that was in the car. The government gave the jury all of these factors to make a determination as to what the weight of this bale was, how it was in relation to the other bales. And finally, on cross-examination, the government asked the defendant about the weight of the bale, and he initially testified, I have no reason to believe that it weighed what you have on the paper there, sir, referring to the indictment. He later, under redirect, retracted from this statement. But the jury had this statement, and they were entitled to credit it. So the government would submit that the district court did not clearly err in finding by a preponderance of the evidence that this was 10 kilograms. And I think it shows the attentiveness of the jury, the fact that they reduced it from the 10.5 as alleged by the government for the wrapping. And they clearly were paying attention to the argument in this case. Defense counsel also submits his motion to dismiss for lack of jurisdiction. And with regards to this, this statute, Section 925, is just absolutely not on point in this case. The Gun Control Act of 1968 basically takes nine categories of people and says you cannot possess a firearm. This includes convicted felons. It includes people who are convicted of domestic violence, people who have renounced their U.S. citizenship. What Section 925 does is it says if one of these people gets a job with the government or with a state and local law enforcement agency or the military, and that job requires them to possess a firearm and furtherance of that job as part of their duties, that they will not be federally prosecuted for possession of that firearm. That's all this statute does. The cases that are cited by defendants show that that is exactly what this statute is intended for. It doesn't apply in this case for two reasons. First of all, this defendant was never exempted from carrying a weapon. He had every right to possess a weapon, both in his individual capacity and in his professional capacity. Second, the defendant admitted at trial that he was not lawfully acting as a law enforcement officer at the time when he took that bail. So that would also underscore why this statute does not apply. I'll also address briefly, because the underlying elements of the possession with intent charge are necessary for the 924C violation, the government did submit a great deal of evidence, as admitted by defense counsel during argument, that the defendant was guilty of this crime. He was, of course, caught on tape stealing the marijuana. He admitted to taking it, admitted that he believed it contained marijuana. Every other bail was tested positive for marijuana. The jury heard this. Expert testimony established that this was a distribution quantity, and the government showed telephone records which showed the defendant placing a call to a relative who was previously convicted of a narcotics trafficking offense shortly after taking the bail. He placed five calls to this number, and clearly this gives him the opportunity to get rid of this bail. In conclusion, unless the Court has any questions for me, viewing the evidence in the light most favorable to the prosecution, with all reasonable inferences drawn in favor of the jury's verdict, any rational trier of fact could have and, in fact, did find the defendant guilty of these crimes. The weapon in this case allowed the defendant to create the opportunity, and it also emboldened, protected, and insulated him from liability while he committed these crimes. Thank you. Okay. Thank you. Mr. Hessel. Mr. Dawes is right. Sorry about that 10 kilos, 20 kilograms. I was reviewing the transcript. Gonzales made the same mistake. It's catchy. It's funny that the government should cite Hector and then come up with this laundry list of things that the Court could or should consider in a 924C violation, because Hector specifically rejects that and cites to United States v. Krauss another decision by this Court, 370F3rd 965, to reject the Fifth Circuit's and other circuits' non-exclusive list of factors to consider in deciding the in relation to and in furtherance requirement of Section 924C. When you consider all the other, and there are no Ninth Circuit cases, all the other cases involving law enforcement, there is no law enforcement case that is not considered by the Court to be a non-exclusive and non-active component. United States v. Moore, there was an actual drug ripoff by a police officer of an undercover police officer posing as a drug dealer in which Moore had the gun out and was pointing it at him. In the group of cases I refer to as the Puerto Rican cases, there were officers there that were hired to escort and protect with their weapons and even with assault rifles, loads of drugs. But once again, it was a sting. There simply isn't anything in the Ninth Circuit suggesting that the inadvertent possession of a firearm by a police officer who sees some pot and picks it up should give him the extra 60-month minimum in prison. As to the weight, there was an awful lot of questioning and answering, both on direct and on redirect, of Mr. Gonzales when he testified about the weight. In response to Mr. Jowell's first question, Gonzales said, and I paraphrase, how should I know? I'm not a scale, he said. Eventually, in cross-examination, he said maybe 13 or 14 pounds as opposed to 10 kilograms, which would be 22 pounds. When asked about why he was bent over, he said it was ungainly, bulky, awkward. But at no point did he say, well, I could judge the weight of it by how much it was. And I think the government also is putting too much on the title of Section 18 U.S.C. 925, where it has exceptions, colon, disabilities. I think it should probably be a comma rather than a colon, just an unfortunate choice of punctuation. But the statute does go on to talk about what the government says it talks about, but not in Subsection A.  MS. MCGOWAN. Thank you, counsel. The matter just argued 57. And we'll next hear argument in Stewart. Thank you.
judges: Fletcher, Rymer, Duffy